UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**\*\* AMENDED 5/1/2016**

**NAME OF PLAINTIFF(S)** JOHN SAVARESE

**\*\* JURY TRIAL DEMANDED**

**COMPLAINT**

**CV-16 0321**

**BIANCO, J.**

**LOCKE, M.J.**

**NAME OF DEFENDANT(S)** J.P. MORGAN CHASE, DONALD MALONEY, CHRISTINE LAWTON, ~~PATRICIA HUFFMAN~~ THOMAS MULLIGAN, (ARE SUED IN THEIR INDIVIDUAL CAPACITIES PURSUANT TO N.Y. EXECUTIVE LAW 296, ET SEQ.)

FILED IN CLERK'S OFFICE U.S. DISTRICT COURT E.D.N.Y.
MAY 09 2016
LONG ISLAND OFFICE

This action is brought for discrimination in employment pursuant to (check only those that apply):

✓ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) (race, color, gender, religion, national origin).
**NOTE:** *In order to bring a suit in federal district court under Title VII, you must first obtain a right to sue letter from the Equal Employment Opportunity Commission.*

✓ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 - 634 (amended in 1984, 1990, and by the Age Discrimination in Employment Amendments of 1986, Pub. L. No. 92-592, the Civil Rights Act of 1991, Pub. L. No. 102-166).
**NOTE:** *In order to bring a suit in federal district court under the Age Discrimination in Employment Act, you must first file charges with the Equal Employment Opportunity Commission.*

✓ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 - 12117 (amended by the ADA Amendments Act of 2008, Pub. L. No. 110-325 and the Civil Rights Act of 1991, Pub. L. No. 102-166).
**NOTE:** *In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a right to sue letter from the Equal Employment Opportunity Commission.*

RECEIVED IN CLERK'S OFFICE U.S. DISTRICT COURT E.D.N.Y.
JAN 21 2016
LONG ISLAND OFFICE

RECEIVED MAY 10 2016 EDNY PRO SE OFFICE

-1-

※ AMMENDED 5/1/2016

Jurisdiction is specifically conferred upon this United States District Court by the aforementioned statutes, as well as 28 U.S.C. §§ 1331, 1343. Jurisdiction may also be appropriate under 42 U.S.C. §§ 1981, 1983 and 1985(3), as amended by the Civil Rights Act of 1991, Pub. L. No. 102-166, and any related claims under New York law.

1. Plaintiff resides at:

91 TALLMADGE TRAIL MILLER PLACE
**Street Address**

SUFFOLK, N.Y., 11764, (631) 764-3274
**County** **State** **Zip Code** **Telephone Number**

2. Defendant(s) resides at, or its business is located at:

J.P. MORGAN CHASE 270 PARK AVENUE
**Street Address**

MANHATTAN, NY, NY, 10017
**County** **City** **State** **Zip Code**

3. The address at which I sought employment or was employed by the defendant(s) is:

CHASE 130 PORTION ROAD
**Street Address**

SUFFOLK, RONKONKOMA, NY, 11779
**County** **City** **State** **Zip Code**

AMMENDED 5/1/20

4. The discriminatory conduct of which I complain in this action includes *(check only those that apply).*

| | |
|---|---|
| ___ | Failure to hire. |
| ✓ | Termination of my employment. |
| ___ | Failure to promote. |
| ✓ | Failure to accommodate my disability. |
| ✓ | Unequal terms and conditions of my employment. |
| ___ | Retaliation |
| ___ | Other acts *(specify):* _____ |

**NOTE:** *Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court.*

5. It is my best recollection that the alleged discriminatory acts occurred on:
   Date(s) __5/1/2013 - 4/30/2014__.

6. I believe that the defendant(s) *(check one)*

   ___ is still committing these acts against me.

   ✓ is **not** still committing these acts against me.

7. Defendant(s) discriminated against me based on my:
   *(check only those that apply and state the basis for discrimination, for example, what is your religion, if religious discrimination is alleged)*

   [ ] race _____       [ ] color _____

   [ ] gender/sex _____ [ ] religion _____

   [✓] national origin __ITALIAN HERITAGE__

   [✓] disability __HEARING IMPAIRMENT__

   [✓] age. If age is checked, answer the following:

   I was born in __1961__. At the time(s) defendant(s) discriminated against me,
   Year
   I was [✓] more [ ] less than 40 years old. *(check one).*

**NOTE:** *Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court.*

8. The facts of my case are as follows:



## AMMENDED COMPLAINT     CV-16  0321

## (Please see attached contentions and allegations in this matter.)

**NOTE:** *As additional support for your claim, you may attach to this complaint a copy of the charge filed with the Equal Employment Opportunity Commission, the New York State Division of Human Rights, or the New York City Commission on Human Rights.*

9. It is my best recollection that I filed a charge with the New York State Division of Human Rights or the New York City Commission on Human Rights regarding defendant's alleged discriminatory conduct on: 9/2/2014.

10. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct on: 9/2/2014.

\*\* AMMENDED 5/1/2016

**Only litigants alleging age discrimination must answer Question #11.**

11. Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct *(check one)*:

    __✓__ 60 days or more have elapsed.

    _____ less than 60 days have elapsed.

12. The Equal Employment Opportunity Commission *(check one)*:

    _____ has not issued a Right to Sue letter.

    __✓__ has issued a Right to Sue letter, which I received on __11/3/2015__.
    Date

**NOTE:** Attach a copy of the Right to Sue Letter from the Equal Employment Opportunity Commission to this complaint.

WHEREFORE, plaintiff prays that the Court grant such relief as may be appropriate, including injunctive orders, damages, pre-judgment interest, costs, and attorney's fees.

Dated: __1/21/2016__

_____
PLAINTIFF'S SIGNATURE

__91 TALLMADGE TRAIL__
Address
__MILLER PLACE, NY. 11764__
__(631) 764-3274__
Phone Number

# AMMENDED COMPLAINT        CV-16   0321

## 8- Factual background:

John Savarese was hired as a Relationship Manager in business banking for J.P. Morgan Chase, N.A. with a start date of May 1, 2013.

Mr. Savarese was actively recruited by Chase recruiters for this newly created division and position and left a position of significant authority and status with Peoples United Bank as Market Manager, responsible for managing six retail branches and over forty bank employees. The recruitment team had communicated over several months that based on Mr. Savarese's tenure knowledge, market and business experience that he was very qualified for this position.

1- That prior to John Savarese's start date commencement, his area manager Brian Farley was terminated from his position, leaving John as a new employee with no direct supervision or direction for over six months. Mr. Savarese had to call in to the Regional Manager Matthew Garvey to learn of his start date, as all communication had broken down prior to May 1st 2013, and he had to give his prior employer much shorter notice as a result of this.

2- That John Savarese was not provided traditional onboarding and orientation afforded younger employees due to his managers sudden, abrupt departure and that the "Code of Conduct" or the terminology of "account abuse" was never explained to Mr. Savarese as a new, older employee of the bank.

3- The Area Manager Matthew Garvey recognized Mr. Savarese for his maturity, leadership and experience having been left "unsupervised" for over six months while Mr. Farley's replacement was hired. This recognition was done in front of other Relationship Managers and Branch Managers within the organization on more than one occasion. Mr. Savarese received different treatment then his younger counterparts, due to his age and maturity and the understanding that he could handle the lack of supervision or guidance, due to his age.

4- That Mr. Savarese was recognized by his new supervisor Patricia Humphrey for the identification and sale of credit products- this recognition was done for his entire team and division in meetings and on team conference calls. (Ie. Burmax and SD Trucksprings as examples). And that both of these credit deals began development and analysis without disclosures first being signed by the client.

5- That Relationship Managers the position that Mr. Savarese held, by virtue of their traveling field position input and create information after meetings, due to the transient nature of the position. This allows for disclosures to be created after actual conversations occur, requiring follow up meetings for signatures from clients.

6- That Mr. Mulligan's statement while investigating Mr. Savarese that **"we never pull credit without a signed disclosure"** is categorically untrue and is not based in fact. The position of Relationship Manager as well as branch platform positions fulfill credit and loan requests without signed disclosures on a daily basis, and Mr. Mulligan is mis-informed of this as an activity in both business and retail banking. This mis-statement and error, by Mr. Mulligan allowed Chase to use the blanket "code of conduct" violation, which was incorrect for this circumstance.

7- That while Chase has a dashboard tracking mechanism in place for account opening errors and missing documents- and that disciplinary steps are followed for these items- this same dashboard mechanism is not used for tracking of credit card disclosures. With no tracking of these items for an error ratio/monitoring of alleged violations, it cannot be categorized as a "code of conduct" violation for some employees and not others- and unfair and disparate treatment of employees.

8- That Mr. Savarese ordered the credit card for Mr. Alweis on the belief that it was what the client wished him to do. When learning that it was ordered in error, the corrective steps were taken to remove the order and credit record impact from Mr. Alweis' account. This was a mis-communication error, not a violation of policy or "account abuse" as the company alleged. This is supported in the findings of Mr. Savarese's unemployment case, in which Chase attempted to deny Mr. Savarese's claim for unemployment benefits and were unsuccessful. (documents to be provided).

9- That prior to the meeting with investigator Mulligan, Mr. Savarese had sent an email to his Supervisor Patricia Humphrey asking her to discuss with him what had transpired with the account error. Mrs. Humphrey never responded to the email and was unaware it was in her inbox, until the investigation had commenced.

10- That Mr. Savarese was never made aware or given a copy of the client email for review. That the referring banker and the financial advisor indicated they would speak to and handle the clients concerns, making it seem that the error was not of major significance or concern.

11- That investigator Mulligan was unaware that Mr. Savarese had subsequent conversations with the client Mr. Alweis in which Mr. Savarese aided the client in the setup and installation of his remote check system scanner, and booked a follow up lending appointment with the client to start the processing of a building loan. Mr. Mulligan only learned of this information in his meeting with Mr. Savarese.

12- That Mr. Savarese suffers from hearing loss that impacts his hearing at a conversational level. This was discussed and verified both with his Area Manager Humphrey, as well as his team members in both car travel and team meetings and dining events. At the time of the client meeting, there was loud road construction noise taking place on Merrick road. Mr. Savarese explained to Mr. Mulligan that he believed he had heard the client say, " Do as you see fit" for all discussed items, when discussing the ordering of several products. Mr. Mulligan dismissed this contention and statement in the investigation.

13- That younger branch and field personnel engage in the same activity of ordering credit cards without disclosures and without reprimand, discipline, monitoring or discussion of the same activity. That credit card disclosure records on file compared to card orders for the period of Mr.Savarese's employment will support this contention as fact of missing, non recorded disclosure statements.

14- That credit manager Tracy Terrell is aware of the fact that credit cards are ordered without disclosures on a daily basis and will truthfully attest to the same.

15- That younger employees with egregious code of conduct violations were given warnings or no disciplinary actions whatsoever for severe violations, such as emailing of confidential client information to unsecured email addresses and account opening violations. (Names and violations to be provided at time of discovery).

16- That Mr. Savarese's circumstance of departure from the bank was not kept confidential to former employees at other banks in hiring and management capacities. This impacted Mr. Savarese's ability to get gainful employment for over nine months. This information was shared with other competing bank employees as well as Chase peer level employees. (An email from the head of business banking Donald Maloney to this effect as well as statements from employees will be shared in discovery).

17- That as a result of the poor mis-management of her Division, Patricia Humphrey was relieved from her supervisory duties. And that due to the poor handling of the team, over ninety percent of the Relationship Managers in her Division have left the bank for other organizations.

18- That Mr. Mulligan has an investigative track record of firings and disciplinary actions that is much more bias and critical to those that are of non-Anglo white characteristics. (This will be proven in review of disciplinary actions for that same time period).

19- That J.P Morgan Chase N.A., against public policy uses the mechanism of "code of conduct violations" to hide business decisions and downsize their organization.

- While the state of New York is an "at will" employment state, it does not give organizations the allowance to fire employees that have made errors that might require discipline or coaching of some kind to correct a procedural issue. This wide range loose interpretation "at will" and "code of conduct" is egregious on the part of Chase as policy and should not be allowed across the banks worldwide footprint, and specifically in New York in this case.

- It is a known fact that this was a newer division in the Chase organization and that staff downsizing and re-distribution was occurring. Mr. Savarese's position and area of responsibility was not replaced, his work and territory was re-distributed to other team members, saving the organization over 100,000 annually on this one position in salary, benefits and pension. This behavior and action against employees is occurring on a daily basis at JPMorgan Chase.

Where Mr. Savarese prays for a fair and expeditious hearing in this matter and seeks the sum of 2.5 million dollars in damages for the financial, emotional and reputation damages that have occurred, due to the egregious willful calculated actions of J.P. Morgan Chase and its management team.

Signed on this day - May 1st 2016

_[signature]_

John Savarese, PRO SE plaintiff

JOHN SAVARESE
91 TALLMADGE TRAIL
Miller Place NY 11764

RECEIVED
U.S. DISTRICT COURT E.D.N.Y.
MAY 09 2016
LONG ISLAND OFFICE

UNITED STATES POSTAGE $000.67
MAILED FROM ZIP CODE 11755

UNITED STATES DISTRICT COURT
EASTERN DISTRICT, LONG ISLAND
PRO SE DIVISION
100 FEDERAL PLAZA
CENTRAL ISLIP, NY 11722